## THE SAXOLEINE.

(District Court, E. D. New York. February 26, 1913.)

SALVAGE (§ 10*)—RIGHT TO COMPENSATION—SAVING SHIP FROM FIRE.

Salvage awards made to a number of tugs for the rescue of a steamship from her slip, where she was in serious danger from an oil fire.

[Ed. Note.—For other cases, see Salvage, Cent. Dig. §§ 18–20; Dec. Dig. § 10.*]

In Admiralty. Suits by Peter Cahill, owner of the steam tug O. L. Halenbeck, by George I. Forsyth, owner of the tugs G. I. and Lester A. Forsyth, by the East Jersey Railroad & Terminal Company, owner of the tug S. G. Brown, by the Standard Oil Company of New York, owner of the tug Standard Oil No. 11, by the Standard Oil Company of New York, owner of tug White Rose, and by George B. Gifford, Jr., against the steamship Saxoleine. Decrees for libelants.

Foley & Martin, of New York City, for Peter Cahill.

Convers & Kirlin, of New York City (Wm. H. McGrann, of New York City, of counsel), for the Saxoleine.

Haight, Sandford & Smith, of New York City (Mr. Hewitt, of counsel), for Forsyths.

Burlingham, Montgomery & Beecher, of New York City (Mr. Clark and Mr. Wells, of counsel), for East Jersey R. & Terminal Co. and Standard Oil Co.

CHATFIELD, District Judge (orally). As far as the facts are concerned, it seems to me that the activities of the tugs and the testimony can very largely be harmonized. It was a salvage service and the risk of destruction to the Saxoleine was great because of the serious con-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

sequence of any flame coming in contact with any part of the cargo where there happened to be vapor.

I think that the Forsyth is entitled to substantially as much credit as she would have been otherwise, even though she was *invited* to perform the service, because she was invited for that purpose, and not hired in any ordinary sense. Her line did part, she had to have help, and her service was short in time.

The Halenbeck had nothing to do with the fire before she went to the Saxoleine. She arrived there in time to take one of the ship's lines from the pier, and also to help at about the time when the tide was having some effect on the efforts of the Forsyth (which at first had been pulling the Saxoleine out from behind the pier where the tide was not so strong). From that time on the Halenbeck, with her large power and generally greater capacity, must have performed a substantial share in the work. The danger was increased to some extent by the bow of the Saxoleine swinging towards the Dunholm. But the proximity at all times was sufficient so that the Saxoleine had to be removed if it could be done, and as she came out she must have swung close enough to the Dunholm, so that it explains, in the way that has been discussed on the argument, the movements of the boats and the view that the different people had of them.

The S. Q. Brown must have arrived shortly after the George Forsyth, and could not have been very much longer in reaching a position around on the starboard side, but where she was substantially out of sight of any of the others and substantially covered by the stern of the Dunholm at the same time. But the S. Q. Brown could not have had such an important part in pulling the boat out of the slip, and the Saxoleine must have been nearly out of the slip by the time the Brown could combine any work with its nozzle with any force in towing.

No. 17 had been doing valuable work in the line of its own duty in saving the boats at the other piers, and then continued in the line of its own duty in coming to the help of the Saxoleine. It did do something in the nature of helping the towing by putting its nose in between the Brown and the ship and taking hold before the Saxoleine got entirely straightened around in the stream, and then the White Rose was on the scene in time to give some assistance and to have been of greater aid if the other boats had not been successful in what they were trying to do.

I think as far as the three men are concerned—Gifford, Warnock, and Place—that on the pier they deserve about equal compensation. The lack of discretion in Gifford was partially prevented in the case of Warnock and Place, because the captain of the Saxoleine gave instructions to Warnock and Place. They were going to act about as Gifford was doing until the captain spoke to them. Each one of them was endeavoring to do what was according to his best judgment, and Gifford followed that up by going on the tug, getting up on the steamer, and attempting to render further service.

As to the amount of salvage to be awarded, the first consideration is that this was an oil fire. That increases the inflammable phase of the danger, and increases the stubbornness of the fire should it once

get hold. It increases the amount of heat, and greatly increases the appearance of danger. All this made the offering of salvage service a thing greatly to be desired and something to be rewarded.

On the other hand, the construction of the boat, the fact that the danger was soon over, and that the fire on board was quickly put out, take the case out of the category of an heroic standing by a ship that is going down, or the saving of life, and puts the case midway between a service that is based upon possible chance of doing great benefit, but where the danger proves to be small, and instances where not only is the danger great, but the service great as well, and long continued and difficult in execution. If the case comprised all of those elements, I think the award, upon a valuation of $250,000, might mount up well towards the bond. If the case had fallen within the category where imminent danger seemed great, but where it afterwards proved to be a matter of chance, the award should run down to something like the amount fixed in the case of the Narragansett.

I think the total amount should be graduated, and, considering the matter both from the standpoint of per cent. and the proportionate credits to the different boats, I fix the following awards: For the two Forsyth tugs together $8,000, of which I award to the George Forsyth $6,000, and to the Lester Forsyth $2,000, to the Halenbeck $5,500, to the S. Q. Brown $3,000, to the No. 17, $1,750, to the White Rose $500.

As to three men, while I think their efforts should be encouraged and their services were helpful, it is very difficult to fix a proper award. Without attempting to establish a standard, simply upon my impression, I award to Mr. Warnock $75, to Mr. Place $75, to Mr. Gifford $100.

In the case of the awards to the tugs two-thirds will go to the owners and one-third to the crew in each instance.